UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LATOYA DIANE SPENCER,

     Plaintiff,

v.                         Case No.:  2:22-cv-18-JES-KCD

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

## REPORT & RECOMMENDATION

Plaintiff Latoya Diane Spencer sues under 42 U.S.C. § 1383(c)(3)[1] for judicial review of the Commissioner of Social Security's decision denying her application for supplemental security income. (Doc. 1.) For the reasons below, the Commissioner's decision (Tr. 15-31) should be affirmed.

## I. Background

The procedural history, administrative record, and law are summarized in the parties' briefs (Doc. 12, Doc. 16) and are not fully repeated here. In short, Spencer filed for benefits in 2019, alleging disability beginning in 2015 due to "physical and mental" conditions. (Tr. 219, 292.) Her application was denied

---

[1] Unless otherwise indicated, all internal quotation marks, citations, and alterations have been omitted in this and later citations.

initially and again upon reconsideration. She then requested further review before an administrative law judge ("ALJ").

Following a hearing, the ALJ found Spencer had severe impairments of depression, anxiety, obsessive-compulsive disorder, paranoia, left knee arthropathy, leg edema, gastrointestinal issues, hernia, lumber spine degeneration, and obesity. (Tr. 19.) All issues raised on appeal concern the mental impairments. Focusing on those, the ALJ further found Spencer had the residual functional capacity ("RFC")[2] to perform light work with additional mental limitations:

> [T]he claimant is limited to low stress work defined as no high production demands, only simple routine repetitive tasks with simpl[e] type job instructions, and only occasional interaction with others at the worksite.

(Tr. 24.)

Considering the RFC and other evidence, including the testimony of a vocational expert, the ALJ found Spencer can perform three jobs that exist in significant numbers in the national economy:

- Marker (DOT 209.587-014) with a light exertion level with a SVP of two and 130,000 jobs in the national economy.

- Marker II (DOT 920.687-126) with a light exertion level with a SVP of two and 29,000 jobs in the national economy.

---

[2] The RFC is an assessment, based on all relevant medical and other evidence, of a claimant's remaining ability to work despite her impairments. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

- Router (DOT 222.587-038) with a light exertion level with a SVP of two and 39,000 jobs in the national economy.

(Tr. 30.)

The ALJ issued an unfavorable decision finding Spencer not disabled at any time from the alleged onset date. The Appeals Council denied further review, and this lawsuit timely followed. (Doc. 1.)

## II. Standard of Review

Review of the Commissioner's (and, by extension, the ALJ's) decision denying disability benefits is limited to whether substantial evidence supports the factual findings and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). It is more than a mere scintilla but less than a preponderance. *Dale v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The Supreme Court recently explained, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154.

When determining whether the Commissioner's decision is supported by substantial evidence, the court must view the record as a whole, considering evidence favorable and unfavorable to the Commissioner. *Foote v. Chater*, 67

3

F.3d 1553, 1560 (11th Cir. 1995). The court may not reweigh the evidence or substitute its judgment for that of the ALJ. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). And even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

## III. Discussion

Spencer presses five arguments on appeal: (1) substantial evidence does not support the ALJ's treatment of medical findings from two State agency psychological consultants; (2) the ALJ failed to include Spencer's mild mental limitations in the RFC; (3) the ALJ erred by finding jobs available which require greater specific vocational preparation than recommended by the Social Security Administration; (4) the ALJ failed to consider the combined effects of her mental limitations in the RFC; and (5) the ALJ did not have constitutional authority to decide her case. These issues are addressed in turn.

### A. Opinions of State Agency Doctors

A medical opinion is "a statement from a medical source about what [the claimant] can still do despite [her] impairment(s) and whether [she has] one or more impairment-related limitations or restrictions[.]" 20 C.F.R. § 416.913(a)(2). When confronted with a medical opinion, the ALJ must consider its persuasiveness using several factors: "(1) supportability; (2) consistency; (3)

4

relationship with the claimant, which includes (i) length of the treatment relationship, (ii) frequency of examinations, (iii) purpose of the treatment relationship, (iv) extent of the treatment relationship, and (v) examining relationship; (4) specialization; and (5) other factors." *Id.* § 416.920c(a).[3]

Supportability and consistency "are the most important factors" in determining persuasiveness. *Id.* § 404.1520c(b)(2). And because of their importance, the ALJ must explain "how [he] considered the supportability and consistency factors for a medical source's medical opinions." *Id.* Put simply, the ALJ must consider the factors of supportability and consistency for each medical opinion.

The revised regulations provide that while ALJs are not required to adopt prior administrative medical findings, they must still consider this evidence under the Commissioner's regulations as appropriate, since state agency medical or psychological consultants are highly qualified experts in Social Security disability evaluation. *Id.* § 416.913a(b)(1).

Two state agency doctors—Jesse Sadovnik and Sandra Diaz—reviewed Spencer's records and completed a mental RFC assessment. (Tr. 109-11, 130-

---

[3] The Social Security Administration recently revised the rules it uses to evaluate medical opinions. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). The final rules became effective in March 2017. *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 898 (11th Cir. 2022). Because Spencer filed her claims after that date (Tr. 219), the revised regulations apply here, and neither party disputes that the revised regulations apply.

32.) They opined that Spencer has moderate limitations with understanding, remembering, and carrying out detailed instructions. (Tr. 109-10, 130.) They also found that Spencer can carry out very short and simple instructions but has moderate limitations in carrying out detailed instructions. (Tr. 110, 131.) The ALJ was "persuaded" by these opinions and assessments, agreeing that Spencer had "severe mental impairments and mental limitations." (Tr. 28.)

Spencer first claims the ALJ failed to "properly articulate supportability and consistency factors concerning the opinions of" Sadovnik and Diaz. (Doc. 12 at 9.) This argument, however, is confined to a single sentence. Spencer offers no analysis beyond summarily claiming error. This will not do. "Plaintiff's failure to offer argument or evidence in support of [a] claim constitutes a waiver of the same." *Collins v. Colvin*, No. 2:14-CV-01429-JEO, 2015 WL 5288882, at *3 (N.D. Ala. Sept. 8, 2015); *see also Manning v. Comm'r of Soc. Sec.*, No. 2:21-CV-288-SPC-MRM, 2022 WL 8213078, at *3 (M.D. Fla. Aug. 1, 2022), *report and recommendation adopted*, No. 2:21-CV-288-SPC-MRM, 2022 WL 4463555 (M.D. Fla. Sept. 26, 2022).

But even if not waived, Spencer's argument falls short. The ALJ followed the regulations by explaining how Sadovnik's and Diaz's opinions are persuasive, focusing on supportability and consistency. As the ALJ noted, their "opinions are consistent with stable findings on examination, inconsistent treatment history, and activities of daily living, including working, driving,

6

shopping, and caring for children." (Doc. 28.) "The claimant [also] demonstrated stable mental status examinations at mental health treatment with inconsistent medication compliance." (*Id.*) Having reviewed the record, the Court is satisfied these conclusions are reinforced by substantial evidence. (*See* Tr. 44-48, 276, 313-19, 322, 973-79, 1203, 1437-51, 1570-74.)

Spencer's primary argument (or at least the only argument sufficiently articulated) concerning Sadovnik and Diaz is directed at a perceived inconsistency in the RFC. The ALJ found Spencer was limited to "simple routine repetitive tasks with simpl[e] type job instructions." (Tr. 24.) The doctors, however, said she is "able to carry out very short and simple instructions, but has moderate limitations in carrying out detailed instructions." (Doc. 12 at 9.) According to Spencer, "the ALJ failed to explain why these key limitations were not included in the RFC even though he found [the doctors'] opinions persuasive." (*Id.* at 12.) In other words, the ALJ was required to (but didn't) articulate why he rejected the limitations provided by Sadovnik and Diaz.

To start, an ALJ need not defer to any medical opinion or prior administrative medical findings. 20 C.F.R. § 416.920c(a). And an ALJ does not have to adopt every part of an opinion or prior administrative medical finding he finds persuasive into the RFC. *See, e.g.*, *Sanders v. Comm'r of Soc. Sec.*, No. 2:20-cv-788-NPM, 2022 WL 970181, at *6 (M.D. Fla. Mar. 31, 2022); *see also*

*K.T.B. v. Comm'r of Soc. Sec.*, No. 3:20-CV-110-MSH, 2021 WL 5906372, at *2 (M.D. Ga. Dec. 14, 2021) ("Plaintiff provides no authority, however, for the proposition that merely because an adjudicator finds a source persuasive, he must accept it wholly and incorporate into his RFC assessment any and all limitations that source suggests. To the contrary, the ALJ must only explain whether a source statement is persuasive considering its supportability in, and consistency with, the medical evidence as a whole."). Thus, it was perfectly acceptable for the ALJ to selectively incorporate the doctors' opinions.

Spencer's contention that the ALJ was required to discuss why he omitted certain limitations found by Sadovnik and Diaz is also incorrect. *See, e.g.*, *Crowley v. Kijakazi*, No. 20-CV-62287, 2022 WL 2805509, at *6 (S.D. Fla. June 30, 2022) ("[T]he applicable regulation[s] (unlike the prior version) provide[] in no uncertain terms that an ALJ is not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually."); *Matos v. Comm'r of Soc. Sec.*, No. 21-11764, 2022 WL 97144, at *6 (11th Cir. Jan. 10, 2022) (rejecting argument that ALJ's RFC finding needed to contain all limitations discussed by state agency psychologists or explain why such limitations were omitted, and affirming notwithstanding argument that ALJ finding ability to "occasionally interact" conflicted with state psychologists' opinion that claimant could have only "limited and superficial social interaction").

But even setting all this aside, Spencer has not shown error. A claimant's RFC is an issue reserved to the Commissioner. *See* 20 C.F.R. § 404.1546(c); *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010) ("[T]he task of determining a claimant's [RFC] and ability to work is within the province of the ALJ, not of doctors[.]"). An ALJ must consider all relevant record evidence in formulating an RFC, not just the medical opinions. 20 C.F.R. § 404.1520(a)(3). The ALJ's decision shows that he considered and accounted for the opinions of Sadovnik and Diaz. And the resulting RFC is supported by substantial evidence. *See Sesler v. Comm'r of Soc. Sec.*, No. 8:20-CV-2835-DNF, 2021 WL 5881678, at *6 (M.D. Fla. Dec. 13, 2021) ("As long as the ALJ properly evaluated the medical opinion—as he has done here—the only issue is whether substantial evidence support's [*sic*] the RFC assessment."). Nothing more is required, and the Court declines to find that the mental assessment prepared by the state doctors requires a more restrictive RFC than the one arrived at by the ALJ. (*See* Doc. 16 at 12-13 (explaining that all three jobs the ALJ found Spencer could perform align with the limitations provided by Sadovnik and Diaz).)

### B. Mild Mental Limitations in the RFC

In assessing Spencer's mental impairments, the ALJ considered the four broad areas of mental functioning set out in the regulations for evaluating mental disorders—known as "paragraph B" criteria. (Tr. 22-24.) Relevant here,

the ALJ found she had a mild limitation in adapting and managing oneself. (*Id.*) Spencer argues the ALJ, having found a "paragraph B" criteria of mild, should have included this limitation in the RFC. (Doc. 12 at 12-14.)

Yet again, the Court is unconvinced. The ALJ stated that he considered "all the claimant's medically determinable impairments, severe and non-severe, in the formation of the residual functional capacity findings in this decision" (Tr. 20.) The ALJ further explained that the RFC assessment reflected the degree of limitation found in the "paragraph B" mental function analysis (Tr. 24) and that the RFC was reduced to account for her supported impairments (Tr. 29). Thus, by all accounts, the ALJ used the "paragraph B" ratings in formulating the RFC. *See, e.g.*, *Wilson*, 284 F.3d at 1224-25.

And contrary to Spencer's claim, the ALJ did account for her mild limitation in adapting and managing oneself. The ALJ's RFC finding (and hypothetical to the VE) restricted Spencer to low stress work, which is defined as no high production demands, only simple routine repetitive tasks with simple type job instructions, and only occasional interaction with others at the worksite. The Eleventh Circuit has "held that an ALJ's hypothetical restricting the claimant to simple and routine tasks adequately accounts for mental limitations where the medical evidence demonstrates that the claimant retains the ability to perform those tasks despite deficiencies." *Land v. Comm'r of Soc. Sec.*, 494 F. App'x 47, 50 (11th Cir. 2012). There is medical evidence that

Spencer could perform low stress work. (*See* Tr. 112.) Thus, there was consideration of her mild impairment. *See, e.g., Timmons v. Comm'r of Soc. Sec.*, 522 F. App'x 897, 907-08 (11th Cir. 2013) (approving of a limitation to "simple, one-two step task[s with] only occasional contact with the public, coworkers, and supervisors" as accounting for moderate limitation in concentration, persistence and pace in light of opinions of two non-examining psychologists' opinions supporting the finding).

Finally, the ALJ's conclusions about Spencer's mild limitation in the area of adapting or managing oneself is supported by substantial evidence. "Evaluation of a claimant's ability to adapt or manage oneself refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting." *Sams v. Saul*, No. CV 1:18-1957-RBH-SVH, 2019 WL 4120448, at *27 (D. S.C. Aug. 14, 2019). "Examples of this area of functioning include[:] [r]esponding to demands; adapting to changes; managing your psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans for yourself independently of others; maintaining personal hygiene and attire appropriate to a work setting; and being aware of normal hazards and taking appropriate precautions." *Id.* Observations of treating and examining practitioners generally show that Spencer had no deficiencies in hygiene and wore appropriate attire. There is also no evidence that Spencer had serious problems

being aware of normal hazards and taking appropriate precautions. She was able to handle mental demands of parenting, including independently making plans and setting goals. She handled her own activities of daily livings without significant assistance from others. Further, she demonstrated stable mental status examinations even without medication compliance. (*See* Tr. 44-48, 276, 313-19, 320, 322, 927, 973-79, 1148, 1153, 1158, 1179, 1203, 1288, 1292, 1437-51, 1570-74.)

### C. Work Findings

The third issue involves the Specific Vocational Preparation—*i.e.*, the time to learn how to complete a task—for the jobs the ALJ found Spencer could perform. The heading for Spencer's argument summarizes her position:

> The ALJ erred in finding plaintiff could perform work with an SVP level of 2 given that the Social Security Administration had told plaintiff she could perform work requiring only a very short, on-the-job training period consistent with SVP level 1.

(Doc. 12 at 14.)[4] Spencer essentially claims the ALJ should have rejected the vocational expert's testimony about her ability to perform the Marker, Marker II, and Router jobs. These jobs have an SVP of 2, which Spencer says makes them inconsistent with the Social Security Administration's statements that

---

[4] "Specific Vocational Preparation (SVP) is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific jobworker situation." Appendix B, Specific Vocational Preparation, SCODICOT. An SPV level of 1 means short demonstration only. *Id.* An SVP level of 2 means anything beyond short demonstration up to one month. *Id.*

she "could perform work which requires only a very short, on-the-job training period, equating to SVP level 1 which requires a short demonstration only." (Doc. 12 at 14-15.)

Two problems. First, the Social Security Administration never limited Spencer to SVP 1 work. The Social Security Administration said she is "capable of performing work that requires less physical effort, and only a very short, on-the-job training period." (Tr. 139, 145.) This statement does not have an SVP component, and Spencer fails to explain how these limitations translate to only SVP 1 work.

Second, and equally preclusive, the statement above was made by the Social Security Administration's disability examiner, first at initial consideration and then at reconsideration, predating Spencer's request for an administrative hearing. Thus, the ALJ had a good reason for ignoring it: "Findings made by a State agency disability examiner made at a previous level of adjudication about a medical issue, vocational issue, or the ultimate determination about whether [the claimant is] disabled" are "inherently neither valuable nor persuasive." 20 C.F.R. § 416.920b(c). As a result, the ALJ "will not provide any analysis about how [he] considered such evidence in [his] determination or decision." *Id.* Under this framework, the ALJ was not required to incorporate the disability examiner's findings even if they somehow limited Spencer to SVP 1 work. "Once Plaintiff appealed the agency's initial

and reconsideration decisions, these statements were no longer binding on the agency; the ALJ is tasked with reviewing the entire record to determine if Plaintiff is disabled by a preponderance of the evidence." *Hedges v. Comm'r of Soc. Sec.*, 530 F. Supp. 3d 1083, 1097 (M.D. Fla. 2021). Spencer cites no authority suggesting that the ALJ was bound by the SSA's earlier determinations.

Moreover, the Eleventh Circuit has found there is no apparent conflict between reasoning level 2 jobs and the ability to perform simple tasks and simple instructions, as set forth in the RFC here. *See Peterson v. Comm'r of Soc. Sec.*, No. 21-10086, 2021 WL 3163662, at *3 (11th Cir. July 27, 2021) ("We conclude that there was no apparent conflict between an RFC limitation to simple, routine, repetitive tasks and the DOT's description of jobs requiring level two reasoning.").

### D. Combined Effects of Moderate Mental Limitations

Spencer next argues that the ALJ failed to consider her mental impairments in combination. That is, the combined effect of her moderate mental limitations noted by the state agency doctors should have resulted in more than a moderate limitation in the RFC. (Doc. 12 at 16-17.)

The ALJ discussed Spencer's mental impairments as required: "The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06,

14

and 12.08." (Tr. 22.) The ALJ then outlined, over nearly two pages, the mental evidence he considered to conclude that Spencer is capable of low stress work, only simple routine repetitive tasks with simple instructions, and occasional interaction with others at the worksite. (Tr. 26-28.) For example, Spencer often presented as stable on mental examination and reported improvement. (*See* Tr. 276, 313-19, 320, 322, 927, 973-79, 1148, 1153, 1158, 1179, 1203, 1288, 1292, 1437-51, 1570-74.)

An ALJ must demonstrate he considered the claimant's impairments—severe and non-severe—in combination at step three and in assessing the RFC. *Heatly v. Comm'r of Soc. Sec.*, 382 F. App'x 823, 825 (11th Cir. 2010). Here, the decision states that the ALJ did just that. (*See* Tr. 22-28.) And his extensive assessment of the medical evidence also demonstrates it. *See Nichols v. Comm'r, Soc. Sec. Admin.*, 679 F. App'x 792, 797 (11th Cir. 2017) (finding no merits in plaintiff's claim that the ALJ failed to evaluate the plaintiff's impairments in combination when the ALJ explicitly stated he considered all impairments in combination, considered all symptoms and the extent those symptoms could be accepted as consistent with all other evidence, and delved into the combined effect of plaintiff's various impairments and their functional limitations). The ALJ summarized and considered the then-record evidence from the entire relevant period. (*See* Tr. 22-28.) The Court may not decide facts anew, reweigh evidence, or substitute its own judgment for the

Commissioner's. *See Bloodsworth*, 703 F.2d at 1239. That substantial evidence supports the ALJ's findings suffices to affirm. *See id.*

### E. Appointment of Social Security Commissioner

Spencer's final volley raises a constitutional challenge. She claims the Commissioner's decision denying her disability claim is constitutionally defective because the Social Security Act provision that limits the President's authority to remove the Commissioner of Social Security without good cause, 42 U.S.C. § 902(a)(3), violates the separation of powers. (Doc. 12 at 17.)

It is unconstitutional for an executive agency to be led by a single head who serves for a longer term than the President and can be removed only for cause. *See Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020). In *Seila Law*, the Supreme Court held that a "for-cause" removal restriction on the President's executive power to remove the Consumer Financial Protection Bureau's director violated constitutional separation of powers. Spencer says that the invalid structure of the CFPB is identical to that of the SSA, making the latter unconstitutional too. (Doc. 12 at 18.)

A year after *Seila Law*, the Supreme Court decided *Collins v. Yellen*, holding that the Federal Housing Finance Agency director's statutory for-cause removal protection was similarly unconstitutional. 141 S. Ct. 1761, 1763 (2021). But the Court was careful to explain that even where an unconstitutional statutory removal restriction exists, a plaintiff seeking relief

16

on that basis must show that the restriction caused her harm. *Id.* at 1787-89.

The Court provided examples of harm:

> Suppose, for example, that the President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have 'cause' for removal. Or suppose that the President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way. In those situations, the statutory provision would clearly cause harm.

*Id.* at 1789.

The Commissioner partly falls on the sword, agreeing that 42 U.S.C. § 902(a)(3) violates separation of powers as much as it limits the President's authority to remove the Commissioner without cause. (Doc. 16 at 17.) But this constitutional infirmity does not automatically entitle Spencer to relief. *See Collins*, 141 S. Ct. 1790 ("For the [Plaintiff] to prevail, identifying some conflict between the Constitution and a statute is not enough." (Thomas, J., concurring)). According to the Commissioner, Spencer "must show that the challenged Government action at issue"—the ALJ and Appeals Council's resolution of her specific claim for disability benefits—"was, in fact, unlawful." *Id.*

Spencer is not treading new ground. Her counsel has made this separation of powers argument several times before and lost for failure to show a compensable harm flowing from the President's inability to remove the

Commissioner without cause. *See, e.g.*, *Puglisi v. Comm'r of Soc. Sec.*, No. 2:21-cv-93-JLB-MRM, 2022 WL 2712691 (M.D. Fla. July 13, 2022). To avoid these cases, Spencer alleges she suffered "a number of egregious injuries":

> (1) she did not receive a constitutionally valid hearing and adjudication from an ALJ to which she was entitled; (2) she did not receive a constitutionally valid decision from an ALJ to which she was entitled; (3) she received an unfavorable decision from this constitutionally illicit ALJ adjudication process; (4) she did not receive a constitutionally valid adjudication process from SSA's Appeals Council to which she was entitled; (5) she did not receive a constitutionally valid determination by the Appeals Council to which she was entitled; (6) she received an unfavorable determination from this constitutionally illicit Appeals Council adjudication process.

(Doc. 12 at 20-21.) Boiled down, Spencer wants the case remanded for a de novo hearing before a new ALJ who does not suffer from an unconstitutional taint. (*Id.* at 21.)

These new arguments fare no better. Even accepting that § 902(a)(3) is unconstitutional, it does not require a rehearing of Spencer's claim because there is no evidence to suggest a nexus between the removal provision and a compensable harm to Spencer. The "harms" Spencer identifies are not those contemplated by *Seila Law*; that is, Spencer's argument fails to show how a purportedly "unconstitutional restriction on the President's power to remove" the Commissioner caused her any harm beyond the provision itself being unconstitutional. *Collins*, 141 S. Ct. at 1789. *Collins* tells us that the ALJ's

decision here is not invalid simply because it can be traced back to an official subject to an unconstitutional removal protection. *Id.* at 1788 n.3.

In sum, Spencer has not pointed to any evidence suggesting there is a connection between § 902(a)(3) and any injury to her. Instead, Spencer limits her claim of injury to the fact that her hearing, the ALJ's decision, the entire adjudication process, and the Appeals Council's process and decision were all constitutionally invalid and illicit. (Doc. 12 at 20-21.) These alleged harms cannot carry the day. It also appears that the ALJ who denied Spencer's claim was not appointed by a Commissioner subject to § 902(a)(3)'s removal restriction, but rather his appointment was ratified by an Acting Commissioner—whom the President could have removed from that role at will, at any time. (Doc. 16 at 22.) Another reason to deny Spencer relief.

Every court to address this issue has rejected Spencer's arguments. There is no reason to chart a new path here. *See Tibbetts v. Comm'r of Soc. Sec.*, 2:20-cv-872-SPC-MRM, 2021 WL 6297530, at *6 (M.D. Fla. Dec. 21, 2021); *Herring v. Comm'r of Soc. Sec.*, No. 2:21-cv-322-MRM, 2022 WL 2128801, at *3 (M.D. Fla. June 14, 2022); *Perez-Kocher v. Comm'r of Soc. Sec.*, No. 6:20-cv-2357-GKS-EJK, 2021 WL 6334838, at *4-6 (M.D. Fla. Nov. 23, 2021); *Vickery v. Comm'r of Soc. Sec.*, No. 5:21- cv-122-PRL, 2022 WL 252464 (M.D. Fla. Jan. 27, 2022).

At bottom, Spencer has not identified compensable harm suffered from applying § 902(a)(3). Her constitutional challenge thus fails. *See, e.g.*, *Linnear v. Kijakazi*, No. CV 121-098, 2022 WL 1493563, at *7 (S.D. Ga. May 11, 2022) (noting that the court "has not found a single instance of a District Judge reversing a Social Security decision on the basis of § 902(a)(3)'s unconstitutionality").

## IV. Conclusion

Considering the record as a whole, substantial evidence supports the ALJ's findings. Accordingly, it is **RECOMMENDED** that the Commissioner be **AFFIRMED** and judgment be entered against Spencer.

**ENTERED** in Fort Myers, Florida on December 8, 2022.

Kyle C. Dudek
United States Magistrate Judge

Copies:   All Parties of Record

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from

the Report and Recommendation. *See* 11th Cir. R. 3-1. To expedite resolution, parties may file a joint notice waiving the 14-day objection period.