```
                UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF FLORIDA
                     FORT MYERS DIVISION
```

LATOYA DIANE SPENCER,

       Plaintiff,

v.                                    Case No: 2:22-cv-18-JES-KCD

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____

## OPINION AND ORDER

This matter is before the Court on consideration of Magistrate Judge Kyle C. Dudek's Report and Recommendation (Doc. #17), filed on December 8, 2022, recommending that the Decision of the Commissioner be affirmed. Plaintiff filed Objections to the Report and Recommendation (Doc. #18) on December 22, 2022. Finding no response filed, the Commissioner was directed to file a response by January 20, 2023. (Docs. #19, 21.) No response was filed, so the objections are deemed unopposed.

*I.*

A district court must make a *de novo* determination of those portions of a magistrate judge's report and recommendation to which an objection is made and to matters of law. See 28 U.S.C. § 636(b)(1)(C). The Court reviews the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards. Walker v. Soc. Sec. Admin., Comm'r,

987 F.3d 1333, 1338 (11th Cir. 2021); Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158 (11th Cir. 2004). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019); Pupo v. Comm'r, Soc. Sec. Admin., 17 F.4th 1054, 1060 (11th Cir. 2021); Buckwalter v. Acting Comm'r of Soc. Sec., 5 F.4th 1315, 1320 (11th Cir. 2021). Even if the evidence preponderates against the Commissioner's findings, the Court must affirm if the decision reached is supported by substantial evidence. Buckwalter, 5 F.4th at 1320; Crawford, 363 F.3d at 1158-59. The Court does not decide facts anew, make credibility judgments, reweigh the evidence, or substitute its judgment for that of the Commissioner. Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1104 (11th Cir. 2021); Buckwalter, 5 F.4th at 1320. The Court reviews the Commissioner's conclusions of law under a *de novo* standard of review. Pupo, 17 F.4th at 1060.

## II.

Following the familiar five-step process applicable to applications for Supplemental Security Income (SSI)[1], the Administrative Law Judge (ALJ) found:

---

[1] Pupo, 17 F.4th at 1057.

Step One:  Plaintiff had not engaged in substantial gainful activity since June 18, 2019, the date her SSI application was filed.  (Tr. 19.)

Step Two:  Plaintiff had the following severe impairments which significantly limit her ability to perform basic work activities: depression, anxiety, obsessive-compulsive disorder, paranoia, left knee arthropathy, leg edema, gastrointestinal issues, hernia, lumber spine degeneration, and obesity.  (Tr. 19.)  Plaintiff's additional medically determined impairments were non-severe.  (Tr. 20.)  The ALJ "considered all the claimant's medically determined impairment, severe and non-severe, in the formation of the residual functional capacity findings in this decision."  (Tr. 20.)

Step Three: Plaintiff's impairments or combination of impairments did not meet or equal the medical severity criteria establishing disability.  (Tr. 20-24.)  As to the severity of plaintiff's mental impairments, she had a moderate limitation in understanding, remembering or applying information; a moderate limitation in interacting with others; a moderate limitation with regard to concentrating, persisting or maintaining pace; and a mild limitation adapting or managing herself.  (Tr. 22-24.)  The ALJ stated the limitations identified in Step Three "are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential

evaluation process." (Tr. 24.) The ALJ continued that mental impairments used at steps 4 and 5 "requires a more detailed assessment of the areas of mental functioning." (Tr. 24.)

Step Four: Plaintiff had the residual functional capacity (RFC) to perform light work, with the following limitation: plaintiff was "limited to low stress work defined as no high production demands, only simple routine repetitive tasks with simply type job instructions, and only occasional interaction with others at the worksite." (Tr. 24.) Based on this RFC, the ALJ found plaintiff was unable to perform her past relevant work. (Tr. 29.)

Step Five: Relying in part on the testimony of a vocational expert, the ALJ found there were three jobs that exist in significant numbers in the national economy that plaintiff can perform: Marker, Marker II, and Router. Therefore, the ALJ found plaintiff was not disabled. (Tr. 30-31.)

### III.

Plaintiff raised five numbered claims in her challenge to the Commissioner's decision. (Doc. #12.) Plaintiff's Objections (Doc. #18) relate to the recommended resolution of three of those claims. The Court addresses each objection in turn.

**A. Evaluation of Dr. Sadovnik and Dr. Diaz Opinions**

Plaintiff argues that the ALJ erred in the evaluation of the opinions of Dr. Jessy Sadovnik, Psy.D., and Dr. Sandra Diaz, Ph.D.,

- 4 -

in two ways. First, plaintiff argues that the ALJ erred by failing to properly articulate how he considered the supportability and consistency factors when evaluating their opinions. (Doc. #18, pp. 9-12.) Second, plaintiff argues that the ALJ erred by failing to include the limitations he found persuasive (a need for very short instructions, limited ability to carry out detailed instructions) in the RFC determination without any explanation why they were not included. (Doc. #12, pp. 8-12; Doc. #18, pp.1-4, 9-12.)

### (1)  ALJ's Decision

In deciding plaintiff's RFC, the ALJ stated that he had "considered all symptoms" and medical opinions. (Tr. 24.) The ALJ described the two-step process for consideration of plaintiff's symptoms (Tr. 24-25), and then discussed the physical and mental impairments which plaintiff asserted were debilitating. (Tr. 25-28.) The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause her symptoms, but that plaintiff's statements about the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical and other evidence in the record. (Tr. 25.) The ALJ discussed the record-evidence concerning imaging performed on plaintiff, findings upon examination, treatment history, and plaintiff's obesity. (Tr. 26.)

The ALJ then discussed plaintiff's mental impairments, finding she was capable of low stress work. (Tr. 26.) The ALJ found that plaintiff's assertion that the mental impairments were debilitating was inconsistent with plaintiff's generally stable mental status examinations, medication management, and daily living activities. (Tr. 26-28.) The ALJ found that plaintiff's "ability to perform low stress work accounts for claimant's mental health findings on examination and treatment history." (Tr. 27.)

The ALJ also discussed the medical opinions in the record, including Dr. Sadovnik, Dr. Diaz, Dr. Russo, Dr. Guttman, PA Martinez, Dr. Bass, and APRN Mitas. (Tr. 28-29.) The opinions of Drs. Sadovnik and Diaz are the ones at issue here.

Dr. Sadovnik rated plaintiff's exertional, postural, and environmental limitations, as well as her understanding and memory limitations. Dr. Sadovnik found that plaintiff was moderately limited in the ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual. (Tr. 109-110.) Dr. Sadonvik also found plaintiff was moderately limited in the ability to interact appropriately with the general public, to accept instructions, to respond appropriately to criticism from supervisors, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.

(Tr. 110.) Dr. Sadonvik concluded that plaintiff's RFC indicated light work. (Tr. 112.) Dr. Diaz considered various limitations to plaintiff's physical, social, and mental RFC. Dr. Diaz also concluded that plaintiff should be limited to light work with short and simple instructions. (Tr. 130, 133.)

The ALJ's lengthy discussion of the evidentiary basis for the RFC finding (Tr. 24-29) included the following evaluation of the opinions of Drs. Sadovnik and Diaz:

> The undersigned is persuaded by the opinions of the state agency psychologists, Jessy Sadovnik, Psy.D. and Sandra Diaz, Ph.D., who opined the claimant with severe mental impairments and mental limitations (Ex. C3A and C5A). The opinions are supported by medical record evidence. The opinions are consistent with stable findings on examination, inconsistent treatment history, and activities of daily living including working, driving, shopping, and caring for children. The claimant demonstrated stable mental status examinations at mental health treatment with inconsistent medication compliance.

(Tr. 28.) After considering the record-evidence, the ALJ determined that plaintiff had an RFC to perform light work, except that plaintiff was limited to low stress work, which was defined as no high production demands, only simple routine repetitive tasks with simple-type job instructions, and only occasional interaction with others at the worksite. (Tr. 29.) This reduction in RFC was "to account for [plaintiff's] supported impairments, symptoms, and pain and supported functional limitations." (Tr. 29.)

**(2) Relevant Legal Principles**

For claims filed after March 27, 2017, an ALJ no longer defers or gives any specific evidentiary weight to a medical opinion. 20 C.F.R. § 416.920c(a).  See Harner v. Soc. Sec. Admin., Comm'r, 38 F.4th 892 (11th Cir. 2022).  Instead, under the revised rule, an ALJ considers five factors "as appropriate" to determine the persuasiveness of a medical opinion: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim, that tend to support or contradict the medical opinion. 20 C.F.R. § 416.920c(a)-(c).  The first two factors are the most important.  20 C.F.R. § 416.920c(b)(2).  The ALJ's decision will articulate the persuasiveness of the medical opinion and will explain how the factors of supportability and consistency were considered.  20 C.F.R. § 416.920c(b)(2).

For supportability, the revised rules provide: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). For consistency, the revised rules provide: "The more consistent a

medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2). Thus, supportability addresses the extent to which a medical source has articulated record medical evidence and explanation bolstering the opinion, while consistency concerns the degree to which a medical source's opinion conforms to other medical or nonmedical evidence in the record. Barber v. Comm'r of Soc. Sec., 2021 WL 3857562, at *3 (M.D. Fla. Aug. 30, 2021) (citation omitted); Szoke v. Kijakazi, 8:21-CV-502-CPT, 2022 WL 17249443, at *3 (M.D. Fla. Nov. 28, 2022).[2]

The regulations do not require an exhaustive discussion of the evidence when evaluating the consistency and supportability of an opinion. See 20 C.F.R. § 416.920c(b)(2). "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [the Court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole." Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005).

---

[2] One of the effects of the revised rule is that the decisions of the Eleventh Circuit under the former rule have been abrogated. Harner v. Soc. Sec. Admin., Comm'r, 38 F.4th 892, 898 (11th Cir. 2022).

**(3) Resolution of Claims and Objection**

The ALJ's decision meets these standards. The ALJ found the evidence of Dr. Sadonvik and Dr. Diaz to be "persuasive," a view which is shared by plaintiff. The ALJ stated his finding on supportability ("The opinions are supported by the medical record evidence." (Tr. 28)) and consistency ("The opinions are consistent with stable findings on examination, inconsistent treatment history, and activities of daily living including working, driving, shopping, and caring for children." (Id.)). The stated findings are supported by substantial evidence. Because the ALJ complied with his obligations under the regulation, the objection to the evaluation process based on consistency and supportability factors is overruled.

The second component of the argument, and the objection, is that the limitations found persuasive by the ALJ (a need for very short instructions, limited ability to carry out detailed instructions) do not appear in the ALJ's RFC determination and there is no explanation why they were not included. (Doc. #12, pp. 11-12; Doc. #18, pp. 1-4.) Plaintiff argues that the ALJ had to do one or the other – include the limitations in the RFC or explain why they were not included – but did neither. (Id.)

The record establishes that the ALJ did include these limitations in the RFC. The ALJ stated that he was accounting for these impairments by limiting plaintiff to low stress work. The

ALJ defined low stress work as work with no high production demands, only simple routine repetitive tasks with simple-type job instructions, and only occasional interaction with others at the worksite. (Tr. 29.) This reduction in RFC was "to account for [plaintiff's] supported impairments, symptoms, and pain and supported functional limitations." (Tr. 29.) The ALJ found that plaintiff's "ability to perform low stress work accounts for claimant's mental health findings on examination and treatment history." (Tr. 27.) Therefore, this portion of the objection is overruled.

### B. Limitations on Adapting or Managing Oneself

The second claim is that, having found plaintiff had a mild limitation in adapting or managing herself, the ALJ should have included this limitation in the RFC assessment or explained why it was not included. Plaintiff argues that the ALJ did neither, rendering the hypothetical question to the vocational expert incomplete and requiring a remand. (Doc. #12, pp. 12-14.) Plaintiff objects to the Magistrate Judge's consideration of a "boilerplate" statement by the ALJ and the conclusion that the ALJ did account for the mild limitation. (Doc. #18, pp. 4-5.) The Court overrules both objections.

When the ALJ was discussing whether plaintiff's impairments or combination of impairments met or equaled one of the SSA's listed impairments at Step Three of the evaluation process, he

discussed plaintiff's various mental impairments. (Tr. 22-24.) The ALJ found plaintiff had a moderate limitation in understanding, remembering or applying information; a moderate limitation in interacting with others; a moderate limitation with regard to concentrating, persisting or maintaining pace; and a mild limitation adapting or managing herself. (Tr. 22-24.) As to the last impairment, the ALJ stated:

> As for adapting or managing oneself, the claimant has experienced a mild limitation. The medical evidence of record reveals the claimant did not usually complain about serious problems with adaptation and managing herself. Observations of treating and examining practitioners generally show the claimant had no deficiencies in hygiene and wore appropriate attire. There is no evidence the claimant had serious problems being aware of normal hazards and taking appropriate precautions. The claimant was able to handle mental demands of parenting. The claimant had no problems with independently making plans and setting goals. The claimant handled her own activities of daily livings without significant assistance from others. Further, the claimant demonstrated stable mental status examinations even without medication compliance. In addition, the claimant performed work activity.

(Tr. 23-24) (record citations omitted).

The ALJ stated the limitations identified in Step Three "are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." (Tr. 24.) The mental impairments used at steps 4 and 5 "requires a more detailed assessment of the

areas of mental functioning." (Tr. 24.) When the ALJ considered plaintiff's RFC, he spent almost three full pages discussing the record evidence. (Tr. 26-29.)

An ALJ must consider all impairments, severe and non-severe, when assessing RFC. Pupo, 17 F.4th at 1064. Having found a mild limitation, the ALJ must either determine plaintiff's ability to work was unaffected by this limitation, explicitly include the limitation in the remaining steps of the evaluation process, or otherwise implicitly account for the limitation in the remaining steps of the evaluation process. Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1181 (11th Cir. 2011).

Plaintiff objects to the Magistrate Judge's reliance on the ALJ's statement that he had "considered all the claimant's medically determinable impairments, severe and non-severe, in the formation of the residual functional findings in this decision." (Tr. 20.) There is certainly nothing inherently improper about an ALJ stating that he has done so. An ALJ's statement that he "considered all impairments" or the like only becomes problematic if the Decision demonstrates that he did not do so. Winschel, 631 F.3d at 1181. The Decision in this case demonstrates that the ALJ did in fact consider all of plaintiff's impairments.

Plaintiff also objects to the Magistrate Judge's conclusion that the ALJ <u>did</u> account for the mild limitation in adapting or managing oneself by imposing the limitation of low stress work.

- 13 -

(Doc. #18, pp. 4-5.)  Plaintiff argues that the ALJ generically considered all symptoms but did not provide any explanation that would indicate that the limitations identified in the RFC assessment subsumed any limitations due to mild limitations in adapting or managing oneself.  Plaintiff argues that 'low stress work' could be linked to concentration, persistence, and pace. (Doc. #18, pp. 4-5.)  Plaintiff argues that at the least it is not clear whether the ALJ included any limitations related to the mild limitations in adapting or managing oneself.  (Id.)

As discussed in the prior issue, the ALJ included a limitation of low stress work, defined as no high production demands, only simple routine repetitive tasks with simple-type job instructions, and only occasional interaction with others.  (Tr. 24.)  The vocational expert considered these limitations as applied to a light exertional level.  (Tr. 59.)  This is consistent with and supported by the opinions of Drs. Sadovnik and Diaz.  The Court finds no error by the ALJ or the magistrate judge.  This objection is overruled.

### C. Limitation to SVP 1 Work Only

The Commissioner found plaintiff could perform work requiring only a very short, on-the-job training period.  (Tr. 139, 145.) Plaintiff argues that this equates to specific vocational preparation (SVP) level 1 (jobs requiring "[s]hort demonstration only").  Yet all three jobs the ALJ found plaintiff could perform

are SVP 2 ("[a]nything beyond short demonstration up to and including 1 month). Plaintiff asserts that the ALJ erred in failing to cite jobs which require only SVP 1 (Doc. #12, pp. 14-15) and objects that the ALJ improperly failed to address the evidence that she should be limited to SVP 1 work (Doc. #18, pp. 5-6). Plaintiff argues that the jobs found by the ALJ would all be precluded because they have a SPV of level 2, and plaintiff should be limited to SVP 1 work.

The Magistrate Judge noted that the State agency did not limit plaintiff to SVP 1 jobs but found that plaintiff could perform work that required a very short, on the job training period, which is not a SVP component. (Doc. #17, p. 13.) Plaintiff objects, asserting that the State agency limitation to a "very short" demonstration period is effectively SVP 1, while SVP 2 is something "beyond short demonstration." (Doc. #18, p. 6.)

The Eleventh Circuit has discussed the differences between SVP 1 and SVP 2:

> The primary difference between levels one and two is the *length* of the instructions—not the complexity. While level one specifies that the instructions must be "simple," level two similarly specifies that they must be "uninvolved." Merriam-Webster defines "simple" as "readily understood or performed;" it defines "uninvolved" as "not involved," meaning not "marked by extreme and often needless or excessive complexity." *Simple*, *Uninvolved*, *Involved*, Merriam-Webster's Online Dictionary, https://www.merriam-webster.com. "Simple" is listed as an antonym

- 15 -

> for "involved." Id. Accordingly, the difference between levels one and two lies in the *length* of the instructions, with level one being limited to one- or two-step instructions, and level two not being limited in length.

Buckwalter v. Acting Comm'r of Soc. Sec., 5 F.4th 1315, 1323 (11th Cir. 2021). The hypothetical presented to the vocational expert was as follows:

> Considering age, education and work experience, and the hypothetical does she have the capacity to perform work at the non exertional level? But her ability to do light work is restricted and that she can only perform low stress work and I would define low stress work for you as follows. Low stress is work that has no high production demands and tells only simple, routine, repetitive tasks with simple job instructions and there is only occasional interactions with others at the work site in low stress work.

(Tr. 59.) The Court finds that a SVP level of 2 is not inconsistent with the restriction to "low stress work." Therefore, the objection is overruled.

Accordingly, it is now

**ORDERED**:

1. The Report and Recommendation (Doc. #17) is **accepted and adopted** by the Court as supplemented by this Opinion and Order.

2. Plaintiff's Objections (Doc. #18) are **OVERRULED.**

3. The Decision of the Commissioner of Social Security is **affirmed.**

4. The Clerk of the Court shall enter judgment accordingly and close the file.

**DONE and ORDERED** at Fort Myers, Florida, this __29th__ day of March 2023.

*[signature: John E. Steele]*
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Hon. Kyle C. Dudek
U.S. Magistrate Judge

Counsel of Record